IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALETA WARREN,

    Plaintiff,

v.

UNITED STATES BUREAU OF
RECLAMATION, an agency of the federal
government within the Department of the
Interior, CENTRAL OREGON
IRRIGATION DISTRICT, an Oregon
municipal corporation, ESTEVAN LOPEZ,
in his official capacity as the Commissioner
of the Bureau of Reclamation, DAWN
WIEDMEIER, in her official capacity as
Columbia-Cascades Area Manager for the
Bureau of Reclamation, and CRAIG
HORRELL, in his official capacity as the
District Manager of Central Oregon Irrigation
District,

    Defendants.

Civ. No. 6:16-cv-01788-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Defendants Central Oregon Irrigation District and Craig Horrell ("Irrigation District") move to dismiss Plaintiff's First Amended Complaint ("FAC"), ECF No. 4, pursuant to Rule

1 – OPINION AND ORDER

12(b)(1), claiming lack of subject-matter jurisdiction. Defendants argue that Plaintiff lacks standing and that her claims are not ripe for judicial review.[1] Def.'s Mot. Br. 6, ECF No. 12.

The Plaintiff, Ms. Aleta Warren, brings this action seeking to enjoin two piping projects, the I-lateral Project and the PBC Piping Project.[2] These projects involve the piping of open irrigation canals in and around Deschutes County, Oregon. Plaintiff seeks relief in the form of a declaratory judgment that defendants have violated the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA") in conjunction with the two projects. Plaintiff also seek a declaratory judgment that a 2014 Memorandum of Agreement entered into by the Central Oregon Irrigation District, the U.S. Bureau of Reclamation, and the Oregon State Historic Preservation Officer, is invalid and does not operate to mitigate the destruction of historic canals with regard to future piping projects. FAC, 30-31, ECF No. 4.

Because the Court finds for the reasons detailed below that Plaintiff lacks Article III standing, Irrigation District's Motion to dismiss (ECF No. 12) and Federal Defendant's Motion to dismiss (ECF No. 25) are GRANTED.

## FACTUAL BACKGROUND

Irrigation District is an Oregon municipal corporation operating an irrigation system that consists of two main canals, Pilot Butte Canal and Central Oregon Canal. Horrell Decl. ¶ 2, ECF No. 13. The Pilot Butte Canal runs north through Bend, Redmond and Terrebonne. The Central Oregon Canal runs east through Bend, Alfalfa and Powell Butte. *Id.* ¶ 2. The two main canals divert water from the Deschutes River and feed it into hundreds of miles of smaller lateral canals

---

[1] Three other defendants, the United States Bureau of Reclamation, Bureau of Reclamation Commissioner Estevan López, and Columbia-Cascades Area Manager Dawn Wiedmeier (collectively referred to as "Federal Defendants") join in the arguments raised by Irrigation District while also moving to dismiss on related, but minutely distinct rationales. ECF No. 25.
[2] The PBC Piping Project is also known as Juniper Ridge Phase 2. This opinion will refer to the project as the PBC Piping Project.

2 – OPINION AND ORDER

in order to provide water for about 45,000 acres within an 180,000 acres area in Central Oregon. Horrell Reply Decl. ¶11, ECF No. 20.

## I. I-Lateral Project

Beginning in October 2012, defendant and the North Unit Irrigation District commenced was it called the "I-Lateral Project," which piped 5,000 feet of the I-Lateral ditch off the Central Oregon Canal in the vicinity of Alfalfa, Oregon. Horrell Decl. ¶ 11, ECF No. 13; FAC 4 & 54. This project was completed in June 2013. Horrell Decl. ¶ 11, ECF No. 13. The project was funded in part by a WaterSMART grant by the U.S. Bureau of Reclamation.[3]

## II. PBC Piping Project

In October 2010 Irrigation District completed the Juniper Project which consisted of piping approximately three miles of the Pilot Butte Canal north of Bend and construction of a small hydroelectric plant. Horrell Decl. ¶ 11, ECF No. 13. After the completion of this project, Irrigation District considered conducting another project, phase 2 to the Juniper Project. It is Juniper Project - Phase 2 that is known as the PBC Piping Project that Plaintiff seeks to enjoin. FAC ¶ 4, ECF No. 4. The proposed PBC Piping Project would have added another mile of piping to the Pilot Butte Canal. Horrell Decl. ¶ 6, ECF No. 13. Funding for this potential project included a loan from the Oregon Department of Environmental Quality, a grant from Energy Trust of Oregon, and a WaterSMART grant from the United States Bureau of Reclamation ("Bureau of Reclamation"). *Id.*

Irrigation District, in support of its Motion to dismiss, submitted an initial declaration and a second reply declaration from its manager, Craig Horrell. ECF No. 13 & 20. Mr. Horrell declares the PBC Piping Project had been cancelled before the filing of plaintiff's complaint and

---

[3] The purpose of piping open canals is to conserve water that would otherwise be lost due to evaporation and leakages. The I-Lateral Project conserves approximately 1,300 acre-feet of water. The PBC Piping Project would have conserved approximately 2,550 acre-feet of water from the Deschutes River.

3 – OPINION AND ORDER

that no federal funds have been spent on the project. Horrell Decl. ¶ 8, ECF No. 13. Mr. Horrell declares that Irrigation District "neither received nor spent a single dollar from a state or federal agency to support any aspect of the Juniper Phase 2 project." *Id.*

Irrigation District applied for a WaterSMART grant on January 2, 2013 and the Bureau of Reclamation approved funding. Liday Decl. Ex. 2, 53-314, ECF No. 16. The funding approval did not immediately release funds, but acted a promise to release funds in the future once certain conditions were fulfilled. Horrell Reply Decl. ¶ 9, ECF No. 20. Because the project was eventually cancelled, the pre-conditions were never met, and the federal grant money was never released or transferred to Irrigation District. *Id.* Mr. Horrell was hired as the Irrigation District manager in June 2014. At that time Mr. Horrell placed the PBC Piping project on hold in order to conduct a system-wide review of the canal's delivery system. Horrell Decl. ¶ 7, ECF No. 13; Horrell Reply Decl. ¶¶ 3-4, ECF No. 20. Mr. Horrell, as district manager, decided to "entirely abandon" the PBC Piping Project in early 2016. Horrell Decl. ¶ 7, ECF No. 13; Horrell Reply Decl. ¶ 5 ECF No. 20. On July 12, 2016, the Board of Directors for Irrigation District ratified the decision to cancel the project by resolution. Horrell Reply Decl. ¶ 10, Ex's. 3 & 4, ECF No. 20. The original complaint in this lawsuit was filed September 9, 2016. ECF No. 1.

On August 8, 2016, Irrigation District applied to the Bureau of Reclamation to re-allocate the WaterSMART grant originally approved for the PBC Piping Project to a different project not at issue in this case. Horrell Decl. ¶ 8, Ex.'s 1 & 2, ECF No. 13. The application to re-allocate the funds explains the PBC Piping Project has been cancelled and seeks to transfer the funds to a different project rather than forfeit. *Id.* As of at least August 2016, the PBC Piping Project has been cancelled and there are no plans in existence to conduct the project in the future. Horrell Decl. ¶ 9, ECF No. 13; Horrell Reply Decl. ¶ 11, ECF No. 20.

4 – OPINION AND ORDER

## III. WaterSMART grant

The allegations of a violation of NEPA and NHPA are dependent on the existence of federal funding because only projects receiving federal funding are subject to the requirements of the two acts. FAC, ¶¶ 56, 127, 132, ECF No. 4. WaterSMART grants are provided for under Sec. 9504 of the 2009 SECURE Water Act.[4] The Secretary of the Interior is authorized to provide grants to any eligible applicant for the purpose of providing funds to assist in planning, designing, or constructing an improvement to conserve water and/or to increase water-use efficiency, as well as half-a-dozen other purposes designed to enhance water management or benefit fish or wildlife species determined to be in declines. 42 U.S.C. § 10364(a)(1).

For the I-Lateral Project, the North Unit Irrigation District applied to the Bureau of Reclamation for a WaterSMART grant in January 2012 which was approved. Fed. Def.'s Mot. 6-7, Ex. 1, ECF No. 25-1. North Unit Irrigation District in return helped fund the installation of the piping of a roughly mile-long section of Irrigation District's I-Lateral ditch. The piping conserved approximately 1,300 acre-feet of water from evaporation and seepage which provided the basis for transferring that amount of water rights from Irrigation District to North Unit Irrigation District. The same amount was then transferred by North Unit Irrigation District for permanent instream use in Crooked River.

The Bureau of Reclamation determined upon evaluation that the project fit within a Categorical Exclusion and did not need to undergo a NEPA-required environmental assessment. The section of I-Lateral canal to be piped was determined however to be historic property, eligible to the National Register of Historic Places and subject to the National Historic Preservation Act (NHPA). *Id*, Ex. 2. The Advisory Council of Historical Places was invited to

---

[4] SECURE Water Act was passed as part of the larger Omnibus Public Land Management Act of 2009, Pub. L. 111-11, Title IX, Subtitle F, §§ 9501-10 (Mar. 30, 2009).

5 – OPINION AND ORDER

participate in the consultation process to resolve adverse effects, but declined. The Bureau of Reclamation entered into a Memorandum of Agreement among itself, the Oregon State Historic Preservation Office, and Irrigation District to summarize actions to be taken to mitigate the adverse effect to the historical integrity of the I-Lateral canal. Fed. Def.'s Mot. 7, Ex. 3, ECF No. 25-3.

With respect to the PBC Piping Project, Irrigation District began the application process for a WaterSMART grant in January 2013. Fed. Def.'s Mot. 8, Ex. 5, ECF No. 25-5. The Bureau of Reclamation determined the proposed project fit with a NEPA Categorical Exclusion. The Bureau entered into a revised 2014 Memorandum of Agreement between itself, Irrigation District and the State Historic Preservation Office to provide mitigation pursuant to NHPA. Because the PBC Piping Project was cancelled, the WaterSMART grant was re-allocated to another project. Irrigation District has not received or spent funding from a state or federal agency for the PBC Piping Project. Horrell Decl. ¶ 8, ECF No. 13.

## STANDARD OF REVIEW

### A. Standing

This Court must dismiss a claim if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction bears the burden of establishing that subject matter jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). First, the plaintiff must prove that he has suffered an injury in fact, which is a concrete and particularized invasion of a legally protected interest. *Id.* at 560. This injury must be actual or imminent, not conjectural or hypothetical. *Id.* Second, there must be a causal connection, meaning the injury must be fairly traceable to the conduct cited in the Complaint. *Id.* And third, there must be redressability, or a likelihood that a favorable decision will redress the injury. *Id.* at 561.

6 – OPINION AND ORDER

In deciding a Rule 12(b)(1) motion, the court may consider materials beyond the pleadings when a defendant makes a factual challenge to subject matter jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Evidence that goes to the court's subject matter jurisdiction may be submitted and considered when deciding a Rule 12(b)(1) motion. *See Green v. United States*, 630 F.3d 1245, 1248 n.3 (9th Cir. 2011) (on a Rule 12(b)(1) motion, "proof of jurisdictional facts may be supplied by affidavit, declaration, or any other evidence properly before the court, in addition to the pleadings challenged by the motion.").

## B. Ripeness

Ripeness, like standing, originates as part of the Article III's case or controversy requirement. *Oliver v. Delta Fin. Liquidating Trust*, No. 6:12-cv-00869-AA, 2012 WL 3704954, at *4 (D. Or. Aug. 27, 2012), *citing Western oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1290 (9th Cir. 1990). A court cannot oversee matters which are premature for review. *Id.* "A dispute is ripe in the constitutional sense if it 'present[s] concrete legal issues, present in actual cases, not abstractions.'" *Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188, quoting *Colwell v. HHS*, 558 F.3d 1112, 1123 (9th Cir. 2009). Where an injury has not yet occurred, it must be at least imminent, that is the threatened injury is 'certainly impending'; there is a "substantial risk" that harm will occur. *Id.* at 1189. (internal citations omitted). Where a motion raises a factual challenge to a federal court's subject-matter jurisdiction, the plaintiff has the burden to establish ripeness through the presentation of affidavits or other evidence." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

## DISCUSSION

### I. I-Lateral Project

7 – OPINION AND ORDER

The injury alleged by Ms. Warren is to her recreational, aesthetic, economic, and cultural interests in the historic canals on and near her property. FAC ¶¶ 1, 7, 130, 136. The complaint looks prospectively alleging that if the I-Lateral project is allowed to be carried out the plaintiff "*will* suffer immediate and irreparable injury." *Id.* (emphasis added). I find Plaintiff has not carried her burden of establishing that (1) an injury in fact has occurred or is imminent, (2) the existence of a causal connection, or (3) the likelihood that a favorable decision will or could redress the alleged injury.

The I-Lateral Project was initiated in October 2012 and completed in June 2013. Plaintiff's response to the Motion acknowledges she was not aware the project had already been initiated as of 2012 or completed as of June 2013. Pl.'s Resp. 11, ECF No. 14. I do find there is evidence Ms. Warren enjoys visiting "the Central Oregon Canal and its laterals" generally. 1st Warren Decl. ¶¶ 7-8; ECF No. 15. Article III standing requires more though. An injury in fact must be concrete and particularized. *Lujan, supra*, 504 U.S. at 560. In the case of *Summers v. Earth Island Institute*, plaintiffs alleged to have suffered injury from past development on Forest Service Land. 555 U.S. 488, 495 (2009). One of the plaintiffs, Mr. Bensman, offered an affidavit asserting that he had visited many national forests and planned to visit several unnamed national forests in the future. *Id.* The court observed that the national forests occupy more than 190 million acres, an area larger than the state of Texas. *Id.* While there is a possibility that Mr. Bensman may have come across a parcel of the national forests affected by a specific development project, that possibility was too tenuous to establish the kind of concrete, particularized injury in fact required for Article III standing. *Id.* at 496.

While the Central Oregon Canal and its laterals occupy substantially less geographical space than our national forests, the two main canals and their lateral due still consist of hundreds

of miles of waterways encompassing tens of thousands of acres through Central Oregon. Horrell Reply Decl. ¶ 11, ECF No. 20. The I-Lateral Project piped a 5,000 foot section of a lateral ditch located more than 15 miles from plaintiff's property. The site is far removed from the main canal is mostly in a gated "No Trespassing" area that crosses private cattle ranching property and is generally inaccessible to the public. *Id.* The western seven-hundred feet of the piped canal does run along the north border of Oregon Badlands Wilderness, BLM land open to public hikers. 2nd Warren Decl. ¶¶ 7-9; ECF No. 28. This tail end of the piped canal sits approximately 0.7 miles from Reynold's Pond Trailhead. *Id.*

Defendants contend there no evidence that Ms. Warren has ever visited the specific site of the I-Lateral Project before or after it was piped, and Ms. Warren for her part has not directly refuted their contention. Ms. Warren declares to "have visited this section of the I-Lateral canal on several occasions" and to "have walked along this section of canal to take photographs, document the historic features, and simply enjoy the scenery." 2nd Warren Decl. ¶ 3, ECF No. 28. In order to reconcile Ms. Warren's declaration that she had visited this section on several occasions with her other declarations that she did not know the I-Lateral piping project had already been completed more than three years ago (2nd Warren Decl. ¶ 5, ECF No. 28), I find that while Ms. Warren has enjoyed and may continue to enjoy visiting the Oregon Badlands Wilderness and its surrounding canals she has not visited the specific section of canal that has been piped by the I-Lateral project. Geographical proximity becomes more important for establishing Article III standing when the particular type of harm alleged is visual enjoyment. *See, Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly "in the vicinity" of it). The type of harm alleged is to Ms. Warren's ability to

9 – OPINION AND ORDER

photograph, document historic features, and to simply enjoy the scenery. There is no allegation that Ms. Warren had previously enjoyed the 5,000 feet of canal that has been piped by the I-Lateral project and there is no allegation that Ms. Warren had plans to visit the 5,000 feet of canal that has been piped. The complaint only alleges enjoyment of the canals in general. Because this fails to establish Article III standing, the allegations as against the I-Lateral Project are dismissed.

## II. PBC Piping Project

Article III standing requires a live case or controversy that is not premature for review. *Oliver, supra*, 2012 WL 3704954. As detailed in the factual background above, Defendant Irrigation District has submitted substantial and germane evidence that the PBC Piping Project was cancelled before the filing of the initial complaint and that there is no plan to pipe that portion of the Pilot Butte Canal. Federal Defendants argue equally that no federal funds have been released for the now cancelled project. Instead the WaterSMART grant has been reallocated to a different project not part of this litigation.

Because no presumption of truthfulness attaches to plaintiff's allegation, plaintiff cannot rely solely on their complaint, but must put forward contradictory evidence showing either actual or imminent harm such as the existence of a planned project. *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008) (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) ("no presumptive truthfulness attaches to plaintiff's allegations.) Plaintiff for her part has responded to the motions to dismiss with numerous documents. I find that the documents submitted by plaintiff fail to controvert the evidence showing the PBC Piping Project was cancelled before the filing of the complaint. The PBC Piping Project does not

present a case and controversy. No injury has occurred, nor is one imminent or threatened. The allegations as against the PBC Piping Project are dismissed.

Although there are no plans to do so, if sometime in the future defendants initiate a new project at the PBC Piping site and fail to follow the law's requirements, then there will be a case and controversy to adjudicate. Unless and until such action occurs though, courts are precluded under the ripeness doctrine from prematurely adjudicating administrative action. *See, Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1067 (9th Cir. 2002).

### III Redressability

I address in short the issue of redressability as it applies to both projects. The relief sought is an injunction enjoining the two projects from moving forward, declaratory judgment that defendants violated NEPA and NHPA, declaratory judgment that a 2014 Memorandum of Agreement is invalid and does not operate to mitigate the destruction of historic canals for future piping projects, and finally "further relief . . . as may be deemed by this Court to be just, proper, and equitable." FAC pp. 30-31, ECF No. 4. The straight-forward conclusion is that a court cannot enjoin a completed project and a court cannot enjoin a project that is cancelled and not in existence. An injunction would have no practical effect to changing the current situation of the parties. There is also a failure to demonstrate that the declaratory judgments sought will address the injury suffered. The 2014 Memorandum of Agreement was entered into after the completion of the I-Lateral Project and to declare it invalid would not redress any alleged harm suffered by Ms. Warren from the I-Lateral Project. As to the PBC Piping Project, because it is cancelled any declaratory judgment on whether there was a violation of NEPA or NHPA or the validity of the 2014 MOA would have no practical effect on whether the PBC Piping Project would move forward or not. Any relief to be granted would not change the cancelled status of the project.

11 – OPINION AND ORDER

Plaintiff's final request is for "further relief . . . as may be deemed by this Court to be just, proper, and equitable." Under the doctrine of mootness a court may construe broadly the relief requested in order to avoid an inequitable situation where a defendant seeks to avoid litigation by "killing" the live controversy upon which the suit was filed or where the project at issue is completed during the course of litigation. *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 893 F.2d 1012, 1015-1016 (9th Cir. 1989). This would be the case if defendants had cancelled the PBC Piping project after the complaint had been filed in order to avoid litigation, only to resurrect the project once the complaint had been dismissed. Mootness is not at issue here though. The motions to dismiss here turn on standing and ripeness. Because the alleged injury is not ripe for review, I find no form of redressability is available or proper. Because there is no effective relief for plaintiff's alleged injury which can be granted the complaint is dismissed.

## CONCLUSION

The Court finds for the reasons detailed above Plaintiff lacks Article III standing. Irrigation District's Motion to dismiss (ECF No. 12) and Federal Defendant's Motion to dismiss (ECF No. 25) are GRANTED. Case is ordered dismissed.

IT IS SO ORDERED.

Dated this 20th day of March, 2017.

_____
Michael McShane
United States District Judge

12 – OPINION AND ORDER